BLAND BALLARD ET AL *v.* CITY OF LOUISVILLE ET AL.

Street Improvement—Duty of City to Keep in Improved Condition.

It being the duty of a city to keep its streets open and safe for public use, unreasonable delay will impose legal responsibilities, and a portion thereof may be relieved in the reduction of the width of a street.

Easements—Reduction of Width of Street—Abutting Owners.

Upon the reduction of the width of a street, the easement thereby becomes invested in the legal ownership of the abutting land owners. While the absolute closing of a street would enure to the benefit of property holders on both sides, up to the center of the street.

Street Improvement—Reduction of Width.

The dedication of a wide street, impracticable of public use, and costly improvement, should be reduced to a width capable of being used and improved for public service.

Same.

Whenever the improvement of a very wide street, would amount to practically a confiscation of the adjoining property, it being of such value as a pro rata division, would not be commensurate with the benefits derived therefrom, or additional enhancement of value, a reduction of the streets' width should be allowed on application of the property-holders.

APPEAL FROM LOUISVILLE CHANCERY COURT.

April 21, 1869.

OPINION OF THE COURT BY JUDGE PETERS:

High street, in the now city of Louisville, but then in the town of Portland, was laid off and dedicated as early as the year of 1818, and perhaps earlier.

It was originally laid off 99 feet wide, but has since been reduced to 66 feet above and east of Bridge street. Its course is parallel with the canal, and a large part of its northern margin extends into the low ground, contiguous thereto, and under the bluff or high embankment which affords a natural road or passway on the southern margin of the street. That this has not been one of the

important thoroughfares of the city so far is evidenced by the fact that that part of the street not reduced has never been graded, paved and macadamized, but remains in its natural state.

This suit was filed by appellants who own property on the north side of the street against the city to reduce the width of the street; the other appellees own property on the south side of the street, and oppose its reduction.

The suit is authorized by the several acts of the assembly of the respective dates of March 9, 1854, and March 10, 1856, to reduce the width of High west of Bridge street.

The one of 1854 enacts:

> "That it shall be lawful for the owner or owners of any lots in, or lands in that part of the city of Louisville known as Eastern and Western Portland, to file a petition in the Louisville Chancery Court alleging that a reduction in width of any of the streets or alleys would not inconvenience the public, but would benefit the owners of said lots adjoining the said reduction; and, on proof of such allegations, said court shall direct and decree the streets or alleys to be reduced in width in such manner as the court may see proper, and the reduction when made *shall belong to the property holders contiguous to the same;* and the chancellor may, upon a like proceeding, close any of said alleys, or streets, and the same when so closed, *shall belong in equal moieties on either sides.* Provided, further, that High street shall not be reduced to less than 80 feet in width, and that no street between High street and the canal shall not be diminished, unless by a recommendation of the property holders, and no street shall be reduced in the town of Portland."

The act of 1856 provides:

> "That the provisions of (the above act) be extended so as to authorize the city of Louisville to file the petition therein allowed, and on such petition, or on petition by a property owner as therein allowed, to obtain a decree as provided by said act, and that High street may be reduced thereby to the width of 66 feet, or more, and so much of the second

provision in said act as limits the reduction of High street to 80 feet be, and the same is, hereby repealed."

It is alleged that said street above and east of Bridge street has been reduced to 66 feet, and that the portion of the street below or west of Bridge street, owing to the northern margin, in many places, being on the low ground, will require so much filling, involving the cutting down its southern margin, as to greatly injure the property on that side, and be exceedingly expensive. Whilst it will cost double or more than the value of the property on the north side to so improve the street, and that it will be unnecessarily and largely expensive to the city to improve such wide intersections of the streets.

The location of this street, its situation, with the evidence and circumstances developed, precludes the idea that there is any peculiar reason why this street should be so much wider than many other more important streets in the city; whilst the very large outlay necessary in order to make this street answer the purposes of its original dedication, will impose a heavy burden upon the property holders and the city, or else to permit the grounds to remain in its natural condition, thereby excluding the property holders and the public generally from the entire use of a large portion of it, and really giving them no benefit of a comfortable and improved street.

There is not 66 feet of this part of the street now in good condition for the accommodation of the passing public. Whilst the remainder is of no use whatever to them, being in such condition as to preclude its use entirely. If the demands of the citizens, the city and public generally have been so unimportant for half a century as not to cause the improvement of even 66 feet of the street, it must indeed be but a vague opinion that these demands in the future will require the whole 99 feet.

When the location, the situation and attending circumstances connected with this street, west of Bridge street, are considered, we cannot doubt but that 66 feet will be ample for the convenience of the citizens, the city and general public, and really impose less burdens on the property holders and city public than the entire width.

Whilst wide streets are generally valuable to both the property holders and the city, yet these may be unnecessarily wide, and thereby impose unnecessary burdens by way of improvement and

keeping them in good condition, and this street seems to be of this class.

We are satisfied as to the policy of reducing this street if there be no legal obstruction.

So far as the city is concerned, it is conceded that she is only the representative of the Commonwealth, and sustains the same relations to the streets that the latter does to the public roads, and that so far as she is concerned in her corporate capacity the streets may not only be reduced, but closed, at the command of the State legislature.

This is not only true, but as it is her duty to keep the streets open and safe for common use, an unreasonable delay may impose upon her legal responsibilities, and, therefore, after a half century's delay in opening and keeping this street in a safe and improved condition, its reduction may relieve her from onerous responsibilities.

But the property holders stand on a different footing.

These acts, however, proceed upon the true legal theory, that the legal title to the streets are in the adjoining lot holders, those on each side holding to the middle of the street, but charged to its width with the public easement; consequently when it shall by any means be rid of such easement, the legal title already being in the owner of the adjoining lots, they enter into full legal possesison, disrobed of any easement; therefore, said enactment provided that the mere reduction of a street should enure to the benefit of the adjoining lot holders, whilst the entire closing of a street or alley should enure to the equal benefit of the property holders on both sides.

This distinction was doubtless because in lessening the streets it might occur, and probably generally would, that the reduction should be entirely on one side, owing to the situation of the ground, but where it should be done by removing the street boundary on both sides, it would of legal necessity enure to the use of the property holders on both sides.

As the reasons for the lessening of this street are applicable to the north boundary alone, any diminution on that side must needs enure to the property holders on such boundary.

This public easement on 99 feet, dedicated as a street, is not of the precise character as the dedication of a public square for a park or other use. In this latter case the mere open space for

light and air enter largely into the consideration; whilst for a street the main considerations are for its utility as a passway, and to give the property holders ingress and egress to and from their property; therefore, whenever a reduction of the street would facilitate, instead of obstructing, the main objects and uses of the dedication, instead of invading this use it would the more efficiently and naturally secure it to the property holders and the public. In other words, if it were reasonably practicable to improve and render comfortable and safe 66 feet of this street as a passway, but was not so as to 99 feet, then the reduction would be to secure the uses and purposes of the dedication by the reduction. The dedication whilst impracticable to be reduced to actual use is valueless, but when put in a condition for actual enjoyment, becomes of important value.

Being satisfied from the evidence that the improvement of this street its whole width would be unnecessarily burdensome, either to the property holders, or the city, or both, and possibly it may be of a character which could not reasonably be imposed on the property holders, and, if so, it would wholly fall on the city treasury, and seeing that its reduction in all human probability will the sooner and more certainly secure to the property holders and city the benefits contemplated by the dedication, and relieve both from an unnecesasry burden in opening, improving and keeping up so wide a street, which neither the private business of the citizens, nor wants of the public, seem to demand, and which will be fully secured to both by a street of 66 feet, as evidenced by the use of a part of this street of that width for over eleven years, without complaint, and as we must presume, from its earlier improvement, to be the more important portion of it, and as great benefits will be secured to the property holders on the north side, and no injury, but really benefits secured thereby to the property holders on the south side of the street, thus securing both private and public benefits, whilst none are injured, it would seem to be a case in which, in the language of the enactment, the courts should require a reduction.

Wherefore, the judgment dismissing appellants' petition is reversed, with directions to render a decree reducing that part of High street below and west of Bridge street to 66 feet, and that the portion of said street, as originally dedicated thus relieved of the public easement shall enure to the benefit of the holders of lots

adjacent thereto, that is, that the portion in front of each lot being thus rid of said easement shall enure to said lot and the owner thereof.

*Pope, for appellants.*

*Bullitt, I. R. Greene, for appellees.*